[No. 3972.]

TURNER CLEMENTS *v.* THE STATE.

1. VARIANCE.—The complaint and information impleaded "Clements Turner." The evidence names, and the verdict and judgment condemn, "Turner Clements." The record fails to identify the party prosecuted as Clements Turner as this appellant who was convicted as Turner Clements. *Held,* that the variance is fatal.
2. MALICIOUS MISCHIEF—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for unlawfully and wilfully causing stock to go upon the enclosed land of another.

APPEAL from the County Court of Guadalupe.    Tried below before the Hon. J. F. McKee, County Judge.

The conviction in this case was for wilfully driving stock upon the enclosed land of another, and the penalty imposed was a fine of ten dollars.

Dick Griffin was the first witness for the State.    He testified that he owned a small tract of land adjoining Charlotte Herran's land on the south, and defendant owned a small tract adjoining Charlotte Herran's on the north.    Some time prior to January, 1885, defendant came to witness and proposed that if the witness would not turn his stock into his, witness's, field until he, defendant, had gathered his crop, He, defendant, would not turn his stock into his field until he, witness, had gathered his crop. That agreement was then entered into.    There was a division fence between the land of witness and that of Charlotte Herran, but no fence between the land of Charlotte Herran and that of the defendant.    The fence between witness's and Charlotte Herran's lands was in a very dilapidated condition, being in some places scarcely knee high.    That fence was built by Charlotte Herran, but was claimed by witness.    Defendant's farm was about a half a mile distant from witness's farm.    Witness could see defendant's house from his.    Witness saw the defendant, in August, turn his horses into his (defendant's) field.    Witness caught the horses, took them to defendant, and told him to tie them up; that they had crossed the fence into witness's field, and that some hogs had invaded his potato patch.    Circus day

in Seguin was August 10. The witness gathered his corn about three weeks before the circus.

Cross-examined, the witness testified that the agreement with defendant was made in the presence and hearing of Soote Hall. Nothing was said in the agreement about the time the crops should be gathered. Witness was gathering corn for Mr. Anderson when defendant gathered his corn. Defendant drove his horses into his own field, whence they passed over the dilapidated fence into witness's field.

Soote Hall testified, for the State, that he lived with Dick Griffin. He saw the defendant turn his horses into his (defendant's) field, in August, 1885, whence they passed into Griffin's field, over a dilapidated fence. Witness did not hear the agreement between defendant and Griffin, testified to by Griffin. Griffin owned no horses or other stock.

Dick Sheffield testified, for the State, that he saw the defendant turn his horses into his field in August, 1885, whence they passed over a bad fence into Griffin's field. The State rested.

Charlotte Herran testified, for the defense, that she was the defendant's mother-in-law. Witness owned a small tract of land between the land of Griffin and that of the defendant. The fence between the places of witness and Griffin was the witness's exclusive property. It was a good fence, from four and a half to five feet high. Defendant lived in the witness's enclosure, and witness knew of her own personal knowledge that he did not turn his horses into his field until after Griffin had gathered his corn. Witness had never heard of an agreement between Griffin and defendant such as that testified to by Griffin. Witness knew that the defendant's horses got into Griffin's field in August, 1885, and Griffin took the horses to defendant, but she knew equally well that they got into that field from the outside, and not from defendant's field. Defendant never at any time in 1885 turned his horses into his field, until after Griffin had gathered his corn. Griffin was not a friend to defendant.

Cross-examined, witness stated that she had not seen all of her cross fence for three weeks, and could not say that it had not been torn down in some places in that time.

Sonne Herran testified that he lived with defendant, and knew that defendant did not turn his horses into his field in 1885, until after Griffin's corn was gathered. The cross fence between the Herran and Griffin farms was a good fence. Defendant's horses

once got into Griffin's field from the outside range. The witness and the defendant were brothers-in-law.

The motion for new trial raised the question discussed in the opinion.

*J. B. Dibrell,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge. The complaint and information upon which the appellant was tried both named the party intended to be prosecuted as "Clements Turner." The evidence, verdict, and judgment are against "Turner Clements." There is nothing in the record to identify Clements Turner, the party prosecuted, with the appellant, who was convicted under the name of Turner Clements. The variance as presented in the record appears to be fatal.

We are furthermore of the opinion that the evidence wholly fails to support the verdict and judgment. The judgment is therefore reversed and the cause remanded.