Ronald Kim ARELLANO, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–251–CR.

Court of Appeals of Texas,
Waco.

July 25, 2001.

**392**

John M. Hurley, Waco, for appellant.

John W. Segrest, McLennan County District Attorney, James Wiley, McLennan County Asst. District Attorney, Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

A jury convicted Ronald Kim Arellano of manslaughter and assessed his punishment at twenty years' confinement plus a fine of $10,000. On appeal, Arellano complains that the evidence is legally and factually insufficient to support his conviction. We find that, based on the evidence, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. Furthermore, after a neutral consideration of all of the evidence, we find that the verdict is not contrary to the overwhelming weight of the evidence. Consequently, we hold that the evidence is legally and factually sufficient to support the verdict. We affirm the judgment.

## BACKGROUND

On the morning of September 1, 1997, Arellano was driving on Pioneer Parkway approaching its junction with China Spring Road. At the same time, Vicente Alvarado along with three of his coworkers were traveling on China Spring Road approaching its junction with Pioneer Parkway. Beverly Patterson was traveling behind Alvarado's truck that morning. Beverly claimed that as she approached the junction she saw a white car traveling down Pioneer Parkway at a high rate of speed. An accident reconstructionist testified that the car was traveling between seventy-three and eighty miles-per-hour in a fifty-miles-per-hour zone. As the car approached the intersection, Beverly saw smoke coming from the car's tires. The car went through the stop sign on Pioneer Parkway and collided into Alvarado's truck. Alvarado was thrown from his truck and suffered blunt force injuries to his head. He later died at the hospital.

After the accident, Beverly saw a man get out of the car and flee the scene through a field. Beverly identified Arellano as this man. Arellano's wife testified at trial. She claimed that Arellano admitted to her that he was driving the car that was involved in the collision and that he fled the scene. In addition, DNA analysis of blood taken from the driver's door of the car confirmed that Arellano was the driver of the vehicle.

## SUFFICIENCY OF THE EVIDENCE

Arellano complains that the evidence is legally and factually insufficient to support his conviction for manslaughter. In particular, he claims there is insufficient evidence: 1) that he was "reckless," and 2) that he caused the victim's death as identified and alleged in the indictment.[1]

### Standard of review

■ In determining whether the evidence is legally sufficient to support the verdict, we view all the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State*, 975 S.W.2d 621, 624 (Tex. Crim.App.1998).

■ In conducting a factual-sufficiency review, we ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the evidence in favor of guilt, although adequate if taken alone, is greatly outweighed by contrary evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000). When performing this review, we give due deference to the factfinder's assessment of the weight and credibility of the evidence. *Id.* at 12. We will find the evidence factually insufficient only where necessary to prevent manifest injustice. *Id.*

### The evidence is sufficient that Arellano was "reckless"

■ In issues one and two, Arellano argues that the evidence is legally and factually insufficient that he was "reckless." A person commits manslaughter if he recklessly causes the death of an individual. TEX. PEN.CODE ANN. § 19.04 (Ver-

non 1994). The Penal Code defines "reckless" as:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (Vernon 1994). "At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex.App.—Austin 1997, pet. ref'd) (citing *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim.App.1975)).

In *Aliff v. State*, 627 S.W.2d 166, 172 (Tex.Crim.App.1982), the Court of Criminal Appeals held that there was sufficient evidence that the appellant was reckless where he operated a motor vehicle at over one-hundred miles-per-hour, passed a car on the shoulder, locked his brakes and skidded forty feet, and collided with another car. The court noted that "[t]here is nothing in the evidence presented which indicates that the appellant was unaware of the risk his conduct created." *Id.*

In *Cooks v. State*, 5 S.W.3d 292, 296 (Tex.App.—Houston [14th Dist.] 1999, no pet.), the Houston court held that the evidence was sufficient to prove recklessness, where appellant was driving one-hundred miles-per-hour on a road on which the speed limit was fifty-five miles-per-hour, and reconstruction experts determined that appellant was still traveling seventy miles-per-hour after impact.

---

1. Arellano does not contest on appeal that he    was involved in the collision.

Likewise, in *Trepanier*, the Austin court held that the evidence was sufficient to prove recklessness, where the appellant moved through two lanes of heavy traffic at an inappropriate speed and then struck a bicyclist, causing his death, while attempting to pass a delivery truck on the shoulder of the road. *Trepanier*, 940 S.W.2d at 830–31.

■ Here, the following evidence demonstrates that Arellano consciously disregarded the risk of his conduct. The speed limit on Pioneer Parkway was sixty miles-per-hour. As Arellano approached the junction with China Spring Road, about two-fifths of a mile away, he passed a clearly visible sign which warned him of a dangerous curve ahead and informed him that the speed limit was reduced to fifty miles-per-hour. Once on the curve, about one-fifth of a mile away, Arellano passed a clearly visible sign warning of the stop sign ahead. Then, still on the curve, Arellano passed another clearly visible sign indicating the road junction ahead. From this point, Alvarado's truck would have been visible. Finally, Arellano came upon another junction sign and the stop sign. Arellano applied his breaks, skidded through the stop sign, and collided into Alvarado's truck. Skid marks extended for two hundred and ninety-three feet, and from this the expert determined that Arellano was traveling between seventy-three and eighty miles-per-hour in a fifty-mile-per-hour zone.

Viewing this evidence in the light most favorable to the verdict, we find that a rational jury could have found beyond a reasonable doubt that Arellano was reckless and consciously disregarded the risk of his conduct. *Weightman*, 975 S.W.2d at 624. Thus, the evidence is legally suffi-

cient to support the finding that Arellano was "reckless."

Giving due deference to the jury's determination, we find that the jury's determination that Arellano was reckless is not outweighed by the evidence that he did all that he could to avoid the collision by braking. *Johnson*, 23 S.W.3d at 11. Arellano's reckless conduct up to the point of his braking made his efforts to avoid the collision futile. Having reviewed all of the evidence neutrally, both supportive of the judgment and contrary to it, we do not find the verdict so contrary to the weight of the evidence as to be clearly wrong and unjust. *Id.* at 12. Thus, the evidence is factually sufficient to support the finding that Arellano was "reckless." Issues one and two are overruled.

### The evidence is sufficient that Arellano caused the victim's death as alleged in the indictment

In issues three and four, Arellano points out that his indictment charged that he recklessly caused the death of "Vicente Alvarado" by various driving offenses.[2] Marguerita Alvarado identified her husband as "Vincente Alvarado." Dr. Karen Ross, the medical examiner, testified that she performed an autopsy on an individual named "Alvarado Vicente" and that his death was caused by blunt force injuries to his head. In addition, the autopsy report listed the victim as "Visente, Alvarado Trejo." Arellano argues that because of the misspellings of the victim's first name, reversal of the victim's first and last name, and the apparent discrepancy in how the victim died, the evidence that he caused the victim's death as identified and alleged in the indictment is legally and factually insufficient.

■ First, there is no discrepancy in how the victim died. The indictment

2. The jury charge correctly named the victim.

charged that Arellano caused the victim's death by various driving offenses. Dr. Ross stated that the victim's death was caused by blunt force injuries to his head which is consistent with having been in a serious car wreck. We have no difficulty in finding legally and factually sufficient evidence that the victim died as a result of the collision.

Second, a variance between the victim's name as alleged in the indictment and the evidence at trial can be fatal to the sufficiency of the evidence. *See Gollihar v. State*, 46 S.W.3d 243, 246–47 (Tex.Crim.App.2001). However, an incorrectly spelled name does not constitute a fatal variance if it comes within the doctrine of *idem sonans*. *Farris v. State*, 819 S.W.2d 490, 496 (Tex.Crim.App.1990), *overruled on other grounds, Riley v. State*, 889 S.W.2d 290, 298 (Tex.Crim.App.1993); *see Herrera v. State*, 623 S.W.2d 940, 941 (Tex. Crim.App.1981); *Martin v. State*, 541 S.W.2d 605, 607–08 (Tex.Crim.App.1976); *Smith v. State*, 763 S.W.2d 836, 840 (Tex. App.—Dallas 1988, pet. ref'd). This doctrine renders a spelling variance immaterial if the alleged name "conveys to the ear, when pronounced according to the commonly accepted method, a sound practically identical to the correct name as commonly pronounced." *Smith*, 763 S.W.2d at 839. We find the spelling variances of Vicente, *i.e.*, Visente and Vincente, fall within this doctrine and are therefore immaterial. *See Gollihar*, 46 S.W.3d at 246–47.

However, Arellano's third argument, that because the autopsy report and the medical examiner's testimony reversed the victim's first and last name there is insufficient evidence that he caused Vicente Alvarado's death as alleged in the indictment, is a more difficult inquiry.

Arellano claims that this case is indistinguishable from *Ward v. State*, 829 S.W.2d 787, 794 (Tex.Crim.App.1992), *overruled on other grounds, Riney v. State*, 28 S.W.3d 561, 566 (Tex.Crim.App.2000). In *Ward*, the Court of Criminal Appeals reversed the conviction because the State's proof that the owner of the burglarized store, "Steve Scott," was insufficient to prove the owner was "Seth Haller" as alleged in the indictment. *Id.*

In addition, there is a line of cases which holds that a fatal variance exists if the indictment identifies the victim by first and last name, but the evidence at trial establishes that the victim's name is actually the reverse. *Herrera*, 623 S.W.2d at 941 (the indictment alleged the injured party was "Pedro Ortiz Gabaldon," but at trial complainant testified his name was "Pedro Gabaldon Ortiz."); *Collins v. State*, 43 Tex. 577 (1875) (fatal variance between alleged victim "Gabriel Carter" and complaining witness "Carter Gabriel"); *Clements v. State*, 21 Tex.App. 258, 17 S.W. 156 (1886) (fatal variance between the named defendant "Clements Turner" and convicted defendant "Turner Clements"); *McKinney v. State*, 149 Tex.Crim. 452, 454, 195 S.W.2d 365, 366 (1946) (fatal variance between the alleged victim "David Eugene Foster" and complaining witness "Eugene Foster Davis").

However, *Ward* as well as these fatal variance cases are distinguishable from the case at hand because each involved an indictment or allegation that named a victim or party which evidence later proved to be incorrect. Here, the indictment correctly named the victim "Vicente Alvarado," but the medical evidence incorrectly reversed the victim's first and last name, "Alvarado Vicente" and "Visente, Alvarado Trejo."

The jury could have drawn the rational inference that the autopsy report and the medical examiner's testimony concerned "Vicente Alvarado." A police detective testified that he investigated a collision on

September 1, 1997, which occurred on Pioneer Parkway. The detective stated that a Hispanic male was involved in the collision who later died at Hillcrest Hospital. The detective identified "Alvarado, Vicente" as the victim of the collision. The autopsy report likewise stated that on September 1, 1997, a Hispanic male died at Hillcrest Hospital from blunt force injuries to his head that he received in a motor-vehicle accident. The autopsy report identified "Visente, Alvarado Trejo" as the victim of the collision. In addition, the autopsy report's external description of the body, "a normally developed Latin male appearing consistent with the recorded age of 56 years," with "receding of the hairline approximately 4 inches on each side of the head," and the "remainder of the hair [being] black with gray," matches photographs entered into evidence. Finally, Alvarado's wife testified that her husband died in a car wreck on September 1, 1997.

A rational jury, viewing all the evidence in the light most favorable to verdict could have found beyond a reasonable doubt that Arellano caused Vicente Alvarado's death as alleged in the indictment. *Weightman*, 975 S.W.2d at 624. Furthermore, after a neutral consideration of all of the evidence, and giving due deference owing to the jury's determination, we find that the jury's finding that Arellano caused Vicente Alvarado's death is not contrary to the overwhelming weight of the evidence. *Johnson*, 23 S.W.3d at 11. Thus, we find legally and factually sufficient evidence that Arellano caused Vicente Alvarado's death as alleged in the indictment. Issues three and four are overruled.

## CONCLUSION

Having overruled Arellano's four issues, we affirm the judgment.