# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00527-CR

**Roy Mack Miller Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2006-233, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Roy Mack Miller, Jr. appeals his conviction for manslaughter.  *See* Tex. Penal Code Ann. § 19.04(a) (West 2003).  The jury found appellant guilty and found that he did use a deadly weapon, to wit: a motor vehicle in the commission of the offense.  Thereafter, appellant entered a plea of true to the enhancement paragraph of the indictment alleging a prior felony conviction.  The jury then assessed appellant's punishment at eleven (11) years' imprisonment, finding that appellant had been previously convicted of a felony as alleged.[1]

---

[1] In the first trial of this case, the jury deadlocked on the issue of guilt and was discharged. A mistrial was declared by the trial court.

## POINTS OF ERROR

In two separate points of error, appellant first challenges the legal sufficiency of the evidence to sustain the conviction, and then challenges the factual sufficiency of the evidence.[2]

## BACKGROUND

The record reflects that on the afternoon of December 2, 2005, a school bus stopped on Texas State Highway 3159 to discharge student passengers. The bus had its amber blinkers and flashing lights on as well as a flashing stop sign displayed. Some seven or eight cars stopped on the highway behind the bus. Appellant, in a pickup truck, passed these stopped vehicles on the right side on a narrow improved shoulder of the road. He struck twelve-year-old Ryan Matthew Padilla who was just exiting the school bus. The impact knocked Padilla approximately ninety-seven feet from his position. The child died three days later from the injuries suffered when he was hit by appellant's truck. At trial appellant entered a written stipulation that the death of Padilla was caused when Padilla was struck by a motor vehicle driven by appellant on the date in question. Appellant also stipulated and agreed to the introduction of photographs, the death certificate of Padilla, a C.D. containing 911 calls and radio traffic, videos of the recreation of the scene by officers as well as the measurements taken at the scene.

The State's first witness was Texas Department of Public Safety Trooper Rodrigo Lleverino, who assisted in the re-enactment of the incident occurring on December 2, 2005.

---

[2] "Court and litigants *should not* combine their legal and factual sufficiency analyses." *Laster v. State*, 275 S.W.3d 512, 519 (Tex. Crim. App. 2009) (emphasis added). These issues require implementation of separate and distinct standards. *Id*.

His assistance consisted of driving his patrol car, equipped with an in-car video device, along the path driven by appellant at varying speeds, a low speed of fifteen miles per hour and a high speed of forty-five miles per hour. Trooper Lleverino testified that during the re-enactment he was able to see the stopped bus a half mile away. The in-car video and another video showing the Trooper driving past the bus was introduced before the jury. Trooper Lleverino was not the arresting or an investigating officer and did not have personal knowledge of what occurred at the scene itself. He did testify that State's exhibit No. 10, appellant's driving license record, did not reflect any prior moving violations in the forty years and ten months since appellant obtained his license.

Mary Florian testified that she drove on Highway 3159 approximately four times a day. She was the driver of the second car stopped behind the school bus with its flashing lights to discharge students. She had in her car her daughter and the daughter's two girlfriends whom she had picked up at school that afternoon. According to Mrs. Florian, it was a beautiful crystal-clear day with no clouds. Mrs. Florian said that as she sat in her car behind the stopped bus, a girl exited the bus and crossed the highway's shoulder. She then saw a blue pickup truck pass her vehicle on the right and on the shoulder of the highway. It made "a swooshing sound" because it was going so fast. She reported that the truck struck Ryan Padilla with "a thump," knocking him eight or nine feet up in the air causing him to bounce when he came down. Mrs. Florian did not know when appellant applied his vehicle's brakes but he eventually stopped after hitting Padilla. After watching a video of the recreation she was of the opinion that appellant was driving at forty-five miles per hour when passing her vehicle. Mrs. Florian testified that she went to the bus to help the driver with the students. She was not sure but believed there were four to six cars stopped behind hers.

3

Ed Mullins testified that on December 2, 2005, he and his wife were returning home from San Antonio, that it was a clear day, and he was able to see a mile and a half ahead of him. The roadway was dry. As Mullins came around a curve and started down Startz Hill, he saw the flashing yellow lights on the bus. He slowed the speed of his vehicle and was the second or third car stopped behind the bus. While talking to his wife, Mullins caught sight of appellant's truck out of the corner of his eye. He saw appellant sitting upright with both hands on the steering wheel as the vehicle passed and then struck the child. Mullins testified that appellant was driving about forty-five miles per hour and he never saw appellant's brake light or heard the screeching of tires.

Mullins' wife, Dorothy, testified that they had been stopped behind the bus for about a minute, when she saw, in the passenger side mirror of her car, a vehicle at a fast rate of speed passing at the right side of the cars behind them. She looked forward and saw a girl run across the shoulder of the road and into the driveway of an RV park and a young boy behind her. Ms. Mullins testified that appellant, driving the truck, never slowed down and never applied his brakes. She knew that the truck was going to hit the boy. Later, Ms. Mullins participated in the re-enactment of the incident and viewed the video made by Trooper Lleverino. She estimated that appellant was traveling at forty-five miles per hour when she saw him.

Carol Hickman was a passenger in the car that eventually stopped directly behind the bus. She testified that "they" earlier observed the moving bus several hundred feet ahead of them, and pulled in behind the bus after they passed Mullins's car, and followed the bus around the curve and down the hill. When the bus put its lights on and stopped, the Hickman car also stopped. About a minute or so after stopping, Hickman saw in her side-view mirror appellant's truck at the rear

4

bumper of her car and heard rocks hitting the side of her vehicle. She yelled to her driver-son, "My God, he's going to hit that kid," who was exiting the school bus. Hickman saw a shoe flying in the air and observed that appellant's vehicle traveled a hundred feet before stopping. She estimated that appellant's speed was close to forty-five miles per hour. She heard no tires screeching and did not observe any brake lights.

Cynthia Padilla, the deceased's sister, was in the process of getting off of the bus, but turned around momentarily, and did not see her brother struck by appellant's vehicle.

Leslie Albiar, the school bus driver, testified that during the incident in question, she turned on the bus's amber lights as it was coming to a stop. The bus's continuously flashing strobe lights were activated, and she cracked the bus doors that turns on the flashing red lights. She set the bus's brakes and checked to see if everything was clear. It was about a minute after the bus stopped by the time Ryan exited the bus. She believed that she saw in a side view mirror appellant's truck on the shoulder on the right side near the second vehicle behind the bus. Albiar stated that she yelled to Cynthia Padilla to stop her from exiting the school bus, Albiar described appellant's driving as "flying." From the recreation of the scene video, Albiar estimated that appellant was traveling at a speed of forty-five miles per hour.

The State rested its case without calling the arresting officer or the on-the-scene investigator who had apparently testified at the first trial. Appellant did not testify or call any witnesses. As noted, appellant had entered into stipulations and agreement as to the introduction of certain evidence. After both sides closed at the guilt/innocence stage of the trial, appellant moved for an instructed verdict of not guilty, which was denied.

5

The trial court submitted Count I of the indictment (manslaughter)[3] to the jury as well as the lesser-included offense of criminally negligent homicide. Count II of the indictment

_____

[3] The pertinent part of Count I of the instant indictment provides:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The GRAND JURORS, duly selected, organized, sworn and impaneled as such for the county of Comal, State of Texas, at the July term, A.D., 2006, of the 207th Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, **ROY MACK MILLER, JR.**, hereinafter styled Defendant,

**COUNT I**

On or about the 2nd day of December, 2005, on a public roadway in Comal County, Texas, Defendant did then and there recklessly cause the death of Ryan Matthew Padilla, by driving his motor vehicle into and colliding with the said Ryan Matthew Padilla, and the said Defendant was reckless due to one or more of the following reasons:

•     Failing to keep a proper lookout while operating his vehicle on said public roadway; and/or
•     Driving said vehicle at a speed greater than was reasonable and prudent under the circumstances then existing, and/or
•     Driving said vehicle at a speed greater than was reasonable and prudent under the conditions without having regard for actual and potential hazards then existing, and/or
•     Failing to control the speed of the said vehicle as necessary to avoid colliding with another person or vehicle that was on or entering the said public roadway in compliance with law and the duty of each person to use due care; and/or
•     Passing on the improved shoulder of said public roadway when unsafe to do so; and/or
•     On said public roadway divided into two clearly marked lanes for traffic, said Defendant failed to stop before reaching a school bus stopped on said public roadway to discharge a student[s] when said school bus was operating a visual sign[s] and/or
•     Failing to exercise due care to avoid colliding with Ryan Matthew Padilla, a pedestrian, on said public roadway; and/or
•     Failing to exercise proper precaution on observing a child on said public roadway: and [sic]

The indictment was drafted in accordance with section 19.04(a) of the penal code and article 21.15 of the code of criminal procedure. Tex. Penal Code Ann. § 19.04(a) (West 2003); Tex. Code Crim. Proc. Ann. art. 21.15 (West 2009).

(aggravated assault) was abandoned by the State. The jury returned its general verdict finding appellant guilty of manslaughter. The jury never reached the issue of the lesser-included offense.

## LEGAL SUFFICIENCY

In his first point of error, appellant challenges the legal sufficiency of the evidence to sustain his conviction. In determining whether the evidence is legally sufficient to support the judgment of conviction, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Cardenas v. State*, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The evidence viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in an appellate review. *See Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). In its review of the legal sufficiency of the evidence, the appellate court does not realign, disregard, or weigh

the evidence. *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury, as the trier of fact, is the judge of the credibility of the witnesses and the weight to be given the testimony, and may accept or reject all or any of a witness's testimony. *See Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *See Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); *Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd).

Section 19.04(a) of the penal code defining manslaughter provides: "A person commits an offense if he recklessly causes the death of an individual." Tex. Penal Code Ann. § 19.04(a). This culpable mental state is defined in section 6.03(c) of the penal code:

> (c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(c) (West 2003).[4]

Appellant's stipulation and agreement to introduce certain evidence in effect established most of the essential elements of manslaughter. Recognizing this, appellant, in his legal sufficiency challenge, asserts that there is no evidence to show that he acted with the culpable mental state of recklessness. This is his chief complaint. Appellant also urges that the evidence is

---

[4] This definition as applicable to the instant case will be discussed later in this opinion.

insufficient to support even one of the "instances or manners" of recklessness alleged in the indictment.[5]  *See* Tex. Code Crim. Proc. Ann. art. 21.15 (West 2009).  Appellant calls attention to the culpable mental state of criminal negligence as defined.  *See* Tex. Penal Code Ann. § 6.03(d) (West 2003).  Appellant attempts to use the difference between the two culpable mental states of recklessness and criminal negligence to illustrate why the prosecution failed to prove recklessness. We do not understand appellant to argue here that the evidence showed appellant was guilty of only criminally negligent homicide.

The *mens rea* involved in manslaughter is recklessness.  *Richie v. State*, 149 S.W.3d 856, 858 (Tex. App.—Amarillo 2004, no pet.).  Manslaughter is a lesser-included offense of murder. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003); *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998); *Adanandus v. State*, 866 S.W.2d 210, 232 n.21 (Tex. Crim. App. 1993). Like murder, manslaughter is a "result of conduct" offense which means that the culpable mental state relates to the result of conduct, i.e., the causing of the death.  *Schroeder*, 123 S.W.2d at 400; *Gilbert v. State*, 196 S.W.3d 163, 166 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (offense is one in which recklessness must go to the conduct causing death).  Because manslaughter is a result of conduct offense, the definition of the culpable mental state of recklessness is limited to the result of conduct.  *Perez v. State*, 216 S.W.3d 855, 857 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994)).  In *Richie*, the Court explained:

> [A]nd, while, according to the statutory definition of reckless, one may be reckless
> regarding the circumstances surrounding his conduct *or* the result of his conduct,

---

[5]  Count I of the indictment is set forth in note 3.

[Tex. Penal Code Ann.] § 6.03(c), the crime defined in § 19.04(a) simply encompasses recklessness *viz* the result of accused's conduct. In other words, the legislature, in defining manslaughter, was not concerned with whether the accused was aware of the circumstances surrounding his conduct but rather with whether his conduct resulted in death.

*Id.* at 858 (emphasis added).

Thus, with regard to the offense of manslaughter, the applicable part of section 6.03(c) should read, "A person acts recklessly, or is reckless, with respect to. . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the. . . result will occur." *Schroeder*, 123 S.W.3d at 400-01.

Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2007, pet. ref'd); *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd). A culpable mental state may be inferred by the trier of fact from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982); *Skillern*, 890 S.W.2d at 880; *Fuentes v. State*, 880 S.W.2d 857, 860 (Tex. App.—Amarillo 1994, pet. ref'd). Here, there was both direct and circumstantial evidence. And circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In fact, circumstantial evidence alone can be sufficient to establish guilt. *Id*.

The question presented here is whether there was some evidence in the record of appellant's trial that would permit a rational jury to find beyond a reasonable doubt that he possessed the requisite culpable mental state of recklessness. Recklessness requires the conscious disregard

10

of a substantial and unjustifiable risk created by the actor's conduct. Whether the actor is aware of the requisite risk is a conclusion to be reached by the trier of fact from all the evidence and the inferences drawn therefrom. *See In re E.U.M.*, 108 S.W.3d 368, 370 (Tex. App.—Beaumont 2003, no pet.). "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon*, 574 S.W.2d at 95. A defendant, however, need not be aware of the specific risk of another's death in order to commit manslaughter. *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd).

Conscious disregard of a substantial and unjustifiable risk have been found in a variety of situations. In *Manning v. State*, 84 S.W.3d 15, 20-21 (Tex. App.—Texarkana 2002), *rev'd on other grounds*, 114 S.W.3d 922 (Tex. Crim. App. 2003), there was sufficient evidence of recklessness where the defendant never applied his brakes, slowed down, or swerved when approaching a lane of stopped traffic with visible warning signs of road construction. *See also Arellano v. State*, 54 S.W.3d 391, 393 (Tex. App.—Waco 2001, pet. ref'd) (sufficient evidence of recklessness where visible signs of reduced speed and skid marks showed excessive speed); *Trepanier*, 940 S.W.2d at 830 (sufficient evidence of recklessness where driver moved onto shoulder to pass on the right); *Lopez v. State*, 731 S.W.2d 682, 684 (Tex. App.—Houston [1st Dist.] 1987), *rev'd on other grounds*, 779 S.W.2d 411 (Tex. Crim. App. 1989) (sufficient evidence of recklessness where defendant struck a pedestrian and a truck parked on the shoulder after failing to maintain a single lane on the road); *Bannister v. State*, 761 S.W.2d 849, 850 (Tex. App.—Beaumont 1988, no pet.) (sufficient evidence of recklessness where truck driver in a heavy fog reversed his truck

11

on the highway and was struck by a driver proceeding legally in the same lane); *Aliff v. State*, 627 S.W.2d 166, 172 (Tex. Crim. App. 1982) (evidence sufficient to show recklessness where defendant operated motor vehicle at over 100 miles per hour, passed a car on the shoulder, locked his brakes, and skidded into a collision with another car).

Here, the record reflects that on a clear day with the road dry, appellant was driving his pickup truck on a public highway when he approached a lane of stopped traffic behind a school bus with all its lights flashing. Appellant passed these vehicles on the right on a narrow improved shoulder of the highway when it was unsafe to do so. He was seen to be seated in his truck with both hands on the steering wheel and looking straight ahead. He did not keep a proper lookout and drove at a speed of forty-five miles per hour which was unreasonable and imprudent under the circumstances. He did not control his truck by braking or reducing speed. In the process, he struck a twelve-year old child with his truck causing the child's death. "At the very heart of reckless conduct is conscious disregard of the risk created by the actor's conduct. . . . " *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

As a general rule, the State is not required to plead evidentiary facts. *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998); *State v. McCoy*, 64 S.W.3d 90, 93 (Tex. App.—Austin 2001, no pet.). Unless a fact is essential to notice, the indictment need not plead evidence relied upon by the State. *Livingston v. State*, 739 S.W.2d 311, 321 (Tex. Crim. App. 1987); *Crum v. State*, 946 S.W.2d 349, 359 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). But, article 21.15 of the code of criminal procedure requires the State to plead with reasonable certainty

the acts or circumstances on which the State will rely to prove the forbidden conduct was committed recklessly or with criminal negligence. Tex. Code Crim. Proc. Ann. art. 21.15 (West 2009);[6] *McCoy*, 64 S.W.3d at 93.

The purpose of the statute is to put the defendant on "notice" that he is charged with recklessness and to specify the act or acts that the State will ask the trier of fact to use in inferring recklessness. *Stadt v. State*, 120 S.W.3d 428, 442-43 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 182 S.W.3d 360 (Tex. Crim. App. 2005). The mental state must generally be inferred from the accused's behavior and the circumstances but the acts relied upon as so proving the mental state need not be the same act constituting the offense. 41 George E. Dix & Robert O. Dawson *Texas Practice: Criminal Practice and Procedure* § 20.171 (2d ed. 2001).

Count I of the indictment here alleged the offense of manslaughter. In addition, and in accordance with article 21.15, it disjunctively alleged eight theories. Appellant does not question the validity of the indictment nor complain of the trial court's jury charge with regard to these allegations of alternate theories. The court's charge submitted the issue of manslaughter to the jury

---

[6] Article 21.15 provides:

Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

Tex. Code Crim. Proc. Ann. art. 21.15 (West 2009).

and added "and the said defendant was reckless due to one or more of the following reasons." *See* note 3 (where indictment is set out).

The charge did not require the jury to make a specific finding as to one or more of the alternatives. The jury returned a general verdict simply finding appellant "guilty of manslaughter as charged in the indictment." When a jury returns a general verdict of guilty on an indictment charging alternative theories of committing the same offense, the verdict stands if the evidence supports any of the theories charged. *Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992); *Kitchens v. State*, 823 S.W.2d 256, 259 (Tex. Crim. App. 1991); *Wheeler v. State*, 35 S.W.3d 126, 133 (Tex. App.—Texarkana 2000, pet. ref'd). With respect to article 21.15, it has been held that because the charge to the jury included several disjunctive means of recklessness, the jury verdict will not be reversed for insufficiency if the evidence is sufficient regarding at least one of the alternatives. *Manning*, 84 S.W.3d at 20.

Appellant does not attack the form of the verdict in his legal sufficiency challenge, but complains that there is either no evidence or a lack of evidence of recklessness to support any of the eight alternate theories submitted. We disagree. As in *Trepanier*, 940 S.W.2d at 829, we conclude that a rational jury could have found beyond a reasonable doubt that appellant's engagement in any one of the acts or omissions alleged in the indictment constituted recklessness.

We determine from viewing all the evidence in the light most favorable to the jury's verdict that a rational trier of fact could have found beyond a reasonable doubt that appellant acted recklessly when he voluntarily created a substantial and unjustifiable risk when, in light of the

circumstances, he moved onto the shoulder to pass on the right the stopped traffic and disregarded the risk of causing the death of a child leaving a school bus with all its lights flashing. We overrule appellant's first point of error.

## FACTUAL SUFFICIENCY

A verdict must be supported by factually sufficient evidence as well as legally sufficient evidence. "But, unlike a legal sufficiency review, which is a federal due process requirement, a factual sufficiency review is a creature of state law. On direct appeal, a court must begin its factual sufficiency review with the assumption that the evidence is legally sufficient under *Jackson* [*v. Virginia*, 443 U.S. 307 (1979)]." *Laster*, 275 S.W.3d at 519.

On direct appeal a court of appeals must in a factual-sufficiency review consider all of the evidence in a neutral light rather than (as in a legal-sufficiency review) in the light most favorable to the verdict. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Evidence can be factually insufficient in two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence is out-weighed by the great weight and preponderance of contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008); *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 414-15.

Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur. *Grotti*, 273 S.W.3d at 283; *Marshall*

*v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson*, 204 S.W.3d at 417; *Cain v. State*, 958 S.W.2d 407, 410 (Tex. Crim. App. 1997). In a factual-sufficiency analysis, it must be remembered that the jury is the trier of fact and judge of the credibility of witnesses. *See* Tex. Code Crim. Proc. Ann. art. 36.13 (West 2007), art. 38.04 (West 1979); *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Appellate courts should be on guard not to submit their own judgment in these matters for that of the trier of fact. *See id.* An appellate court is not free to override a verdict simply because it disagrees with it. *Laster*, 275 S.W.3d at 518; *Cain*, 958 S.W.2d at 407.

An appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial. *Grotti*, 273 S.W.3d at 283 (citing *Watson*, 204 S.W.3d at 417). A reversal for factual insufficiency cannot occur when the greater weight and preponderance of evidence actually favors the conviction. *Roberts*, 220 S.W.3d at 524.

We need not reiterate the facts. Appellant claims that under the standard described above the evidence was factually insufficient in both ways described above. Appellant argues that there is no evidence that he perceived a risk in traveling on the shoulder of the highway because no evidence reflects "when and why" he drove on that shoulder. Thus, appellant simply asserts that there was not any evidence of recklessness. Viewing all the evidence in a neutral light and giving deference to the jury's verdict, we reject appellant's contention that the evidence is factually insufficient to sustain his conviction. The second point of error is overruled.

16

The judgment of conviction is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Patterson, Henson and Onion*

Affirmed

Filed:   January 13, 2010

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).