**AFFIRMED and Opinion Filed May 26, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-21-00214-CR**

**No. 05-21-00215-CR**

**ERICK ESTRADA-MORREAL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause Nos. F19- 57323-L and F19-57322-L**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Smith

The State charged appellant Erick Estrada-Morreal with two offenses stemming from a vehicular collision with two pedestrians: (1) aggravated assault causing serious bodily injury to Ricky Sims and (2) manslaughter for causing the death of Larry Sims. Appellant waived his right to a jury, pleaded not guilty, and proceeded with a bench trial. The trial court found appellant guilty of both offenses and sentenced him to ten years' confinement for each offense, to run concurrently.

In three issues, appellant argues the evidence is insufficient to prove he drove with a reckless state of mind, the trial court erred by admitting a 9-1-1 call over his

hearsay objection, and the evidence is insufficient to prove he caused serious bodily injury to Ricky Sims because of a material variance in the indictment. We affirm the trial court's judgments.

**Background**

On August 9, 2019, at approximately 7:30 a.m., Ricky and his brother Larry walked to a DART bus stop to wait for a bus. The next thing Ricky remembered was waking up in the ICU with people telling him that he and Larry had been hit by a vehicle. Appellant was identified as the driver of the vehicle.

Larry died at the scene. Ricky suffered two spine fractures and ligament damage causing spinal instability. He also suffered two bone fractures in his arm. Ricky required immediate surgery to avoid paralysis. He required a second surgery to treat a subsequent infection.

Jaime Ramiro and Jacqueline Hildreth witnessed the accident. Ramiro was driving down Trinity Forest at approximately fifty miles per hour, the posted speed limit, when a red SUV and a blue truck passed him. Ramiro estimated that the two vehicles were driving sixty-five miles per hour. Because of the "fast speed, and the way they were moving from lane to lane" without a turn signal, he thought they were racing.

Hildreth described the vehicles as "raging," meaning they were speeding, going back and forth in the lanes, and crisscrossing through traffic. As the cars approached slower-moving traffic, the SUV slowed down and the truck swerved

–2–

around it. Hildreth described smoke coming from the truck's wheels when appellant slammed on his brakes. Appellant lost control of his truck when he tried to avoid hitting the slower traffic. The truck spun around once or twice and slammed into the DART bus stop hitting Ricky and Larry before stopping in the grass.

Ramiro immediately stopped and called 9-1-1. Hildreth stopped to render aid. She tried to keep Ricky still, and she saw Larry pinned under the middle of the truck. Hildreth remained at the scene until officers arrived, and she provided a statement. The SUV drove away from the scene.

Officer Michael Holguin arrived, and appellant identified himself. He told Officer Holguin that another vehicle clipped him causing the accident. He later testified that he was driving about fifty miles per hour before the accident, which was "the same rhythm every other car was driving," and changed lanes twice. He felt his tire go flat like "an explosion" and lost control.

Officer Holguin obtained video surveillance from the area. The videos did not show any vehicle clip appellant's truck, and damage to the back of his truck was inconsistent with his claim.

Randy Lancaster conducted the accident investigation and created the crash report. He separated Ramiro and Hildreth and took their witness statements. Both said they observed appellant speeding, weaving in traffic, and unsafely changing lanes. Lancaster determined speeding caused appellant to lose control of his truck and slamming on the brakes caused the truck to rotate and leave the roadway. When

–3–

the truck left the roadway, it hit pedestrians standing at the bus stop. Based on Lancaster's training and experience, he did not think another car clipped or hit appellant.

Officer Dean Winfield conducted forensic mapping of the accident. He was unable to complete a full accident reconstruction because he did not have data regarding the truck's starting point to include in his momentum calculations. Instead, he determined a speed calculation based on the loss of speed due to the skid marks left on the road. The calculated speed loss measured sixty-three miles per hour, which translated to appellant driving approximately eighty miles per hour prior to the accident.

Based on the circumstances, which included speeding, unsafe lane changes, and evasive actions, appellant was arrested and subsequently indicted for aggravated assault causing serious bodily injury to Ricky and manslaughter for causing Larry's death. The trial court found appellant guilty of both offenses and sentenced him to ten years' confinement for each offense, to run concurrently. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant argues the evidence is insufficient to support recklessness because neither the speed at which he was driving nor the evasive actions he took proved the mens rea beyond a reasonable doubt. The State responds the evidence is legally sufficient to support the recklessness mens rea for both offenses.

In reviewing a legal sufficiency challenge, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Davis v. State*, No. 05-08-01683-CR, 2011 WL 5142427, at *2 (Tex. App.—Dallas Nov. 1, 2011, no pet.) (op. on remand, not designated for publication). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences supporting the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

A person commits aggravated assault if he recklessly causes serious bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.02(a). A person commits manslaughter if he recklessly causes the death of an individual. *Id*. § 19.04(a). A person acts recklessly with respect to the results of his conduct when he is aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id*. § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id*.

Based on the indictment, the trial court was authorized to find appellant committed one of four alternate forms of reckless conduct while operating a motor vehicle: (1) driving at an imprudent and unsafe speed, (2) weaving his vehicle on a

roadway and in traffic, (3) making unsafe lane changes, and (4) exercising faulty evasive actions. The verdict must stand if the evidence is sufficient to support any of the reckless acts as charged. *See Turner v. State*, 435 S.W.3d 280, 285 (Tex. App.—Waco 2014, pet. ref'd).

Appellant argues the evidence is insufficient because he testified he was not speeding, and Officer Winfield's testimony was too speculative. He further asserts turning his steering wheel was not a "faulty evasive maneuver" because by braking and turning the wheel, he successfully avoided hitting the vehicles in front of him.

The trial court, as the trier of fact, was authorized to reject appellant's self-serving testimony and accept the State's evidence. *Id*. (concluding jury was free to disbelieve defendant's testimony that his driving above the speed limit did not put other drivers at risk). The evidence did not support appellant's claim that another vehicle clipped him causing him to lose control of the truck. Two witnesses testified that appellant and another SUV were speeding while weaving in and out of early-morning commuter traffic. Appellant passed both cars that were driving fifty miles per hour. Accident reconstruction evidence indicated appellant was driving approximately eighty miles per hour, thirty miles over the posted speed limit, and speeding is a dangerous activity. *See, e.g.*, *Matter of R.C.*, 626 S.W.3d 76, 87 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Aguirre v. State*, 22 S.W.3d 463, 476 (Tex. Crim. App. 1999) (en banc)).

Appellant's assertion that his actions prevented him from hitting other vehicles minimizes the injuries and death he caused. His reckless conduct of speeding and weaving in and out of traffic up to the point of slamming on his brakes made his efforts to avoid an accident futile. *See Arellano v. State*, 54 S.W.3d 391, 394 (Tex. App.—Waco 2001, pet. ref'd).

Appellant acknowledged that he had previously seen people waiting at the bus stop. He further acknowledged he was weaving in and out of the steady morning traffic. Given the time of day, it was reasonable for the trial court to find that appellant knew pedestrians were likely to be waiting at the bus stop and his driving behavior was reckless and a conscious disregard for a substantial risk of injury to others.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could find that appellant committed aggravated assault and manslaughter by recklessly driving his vehicle in a manner that caused Larry's death and seriously injured Ricky. Appellant's first issue is overruled.

### 9-1-1 Phone Call

In his second issue, appellant contends the trial court abused its discretion by admitting Ramiro's 9-1-1 phone call over his hearsay objection. The State responds the trial court properly admitted the recording because it falls within two hearsay exceptions: present-sense impression and excited utterance. Alternatively, the State argues error, if any, was harmless.

A trial court's decision to admit evidence will not be reversed absent an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Under this standard, the trial court's decision will be upheld as long as it is within the "zone of reasonable disagreement." *Id*.

Hearsay is a statement other than one made while the declarant is testifying at trial that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally not admissible unless it fits within one of the exceptions provided in the rules of evidence or other rule or statute. TEX. R. EVID. 802. One exception to the hearsay rule is if the statement is a present sense impression: "A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." TEX. R. EVID. 803(1). The rationale for the exception is that the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory and virtually any danger of insincerity. *See Fischer v. State*, 252 S.W.3d 375, 379 (Tex. Crim. App. 2008). "It is instinctive, rather than deliberate." *Id*.

Ramiro testified, "As soon as the accident happened, I pulled over and called 9-1-1 immediately." Over appellant's subsequent hearsay objection, the State played the 9-1-1 recording.

In the recording, Ramiro told the 9-1-1 dispatcher that there was an accident and a pedestrian was run over at the bus stop. He provided the address, and then said, "A truck spun out and lost control and hit a pedestrian at a bus stop. I don't

–8–

see the pedestrian moving. We need paramedics, fire department, [and the] police department out here." He then provided his contact information as a witness and identified the make, model, and license plate number of the truck. The call lasted approximately two minutes.

Ramiro's call discussed what he had witnessed in the immediate past (appellant's truck spinning out, losing control, and hitting a pedestrian) and what was currently happening (he could not see the pedestrian moving and they needed assistance). His statements to the dispatcher described the accident "while or immediately after" he perceived it. *See, e.g.*, *Kinnett v. State*, 623 S.W.3d 876, 911 (Tex. App.—Houston [1st Dist.] 2020, pet ref'd) (concluding 9-1-1 recording was admissible under present sense exception because caller described what he observed right before and immediately after the car accident); *see also Reyes v. State*, 314 S.W.3d 74, 79 (Tex. App.—San Antonio 2010, no pet.) (concluding 9-1-1 call described events as they were happening and qualified as present sense impression exception).

We conclude that under these circumstances, the trial court's decision to admit the recording was within the zone of reasonable disagreement. In reaching this conclusion, we reject appellant's argument that the trial court abused its discretion because it overruled the objection before hearing the recording. The State introduced the 9-1-1 recording following Ramiro's testimony that after he witnessed the accident, he immediately pulled over and called 9-1-1. Contemporaneity of the

event may be inferred circumstantially. *See Russo v. State*, 228 S.W.3d 779, 808 (Tex. App.—Austin 2007, pet. ref'd). The trial court could reasonably infer, based on Ramiro's testimony, that his 9-1-1 statements were made simultaneously or immediately after witnessing the accident. Furthermore, in a bench trial, "a judge is presumed to disregard inadmissible evidence in deciding on the merits of a case." *See Smith v. State*, 499 S.W.3d 1, 8 (Tex. Crim. App. 2016).

The trial court did not abuse its discretion by admitting the 9-1-1 recording under the present sense impression exception to the hearsay rule. We need not consider whether the excited utterance exception also applies. *See* Tex. R. App. P. 47.1. Appellant's second issue is overruled.

### Variance in Indictment

In his third issue, appellant argues the evidence is legally insufficient to prove he caused serious bodily injury to Ricky because of a material variance in the indictment and the proof at trial. The State concedes there is a variance between the aggravated-assault indictment and the evidence at trial; however, it asserts the variance is immaterial and does not affect the sufficiency of the evidence supporting conviction.

A variance in pleading and proof can occur in two different ways. A variance can involve the statutory language that defines the offense. *See Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). This can happen when a statute specifies alternate methods by which an offense could be committed, the charging

instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. *Id.* A second variance can involve a non-statutory allegation that is descriptive of the offense in some way. *Id.* For example, the charging instrument pleads that the offense was committed with a knife, but the State proves a baseball bat was used. *Id.* at 295. For non-statutory allegations, the court of criminal appeals instructs that we tolerate some variation in pleading and proof such as "little mistakes" that do not prejudice the defendant's substantial rights, but we do not tolerate a variance that amounts to a failure to prove the alleged offense. *Id.*

The "key" to whether a variance is material or immaterial is often whether the variance affects the allowable units of prosecution. *Id.* By example, the court of criminal appeals explained in *Johnson*:

> If there are multiple murder victims, the State may obtain multiple murder convictions. So, the murder of one individual is a different offense from the murder of a different individual. But some types of facts—such as the method by which a murder is committed—do not relate at all to the allowable unit of prosecution. The State could allege "poisoning, garroting, shooting, stabbing, or drowning," of a single individual, and those different acts would simply be alternate methods of committing a single offense. With only one victim, there can be only one murder, regardless of how that murder is committed.

*Id.* at 295–96.

In *Johnson*, the defendant was charged with aggravated assault causing serious bodily injury. *Id.* at 298. The variance involved the charged acts of "hitting the victim with his hand" and "twisting the victim's arm with his hand" versus the proved act of "throwing the victim against the wall." *Id.* The court of criminal

–11–

appeals explained that all of the acts described the causation element of the offense, but none of them were used to describe the injury suffered by the victim. What caused the victim's injury was not the focus or gravamen of the offense and, therefore, the variance was immaterial. *Id*.

Similarly, appellant was charged with aggravated assault by causing serious bodily injury. The indictment alleged that appellant caused serious bodily injury to Ricky by striking Larry; however, the undisputed evidence at trial established that appellant injured Ricky by striking Ricky.[1] As in *Johnson*, this variance is immaterial because "[t]he precise act or nature of conduct in this result-oriented offense is inconsequential." *Id*. The focus or gravamen of the crime is the victim and the bodily injury inflicted. *Id*. at 298. The manner in which appellant caused Ricky's injuries does not define the allowable unit of prosecution. Therefore, the variance between the allegation that appellant struck Larry and the evidence at trial that he struck Ricky is immaterial. *See, e.g., Karl v. State*, No. 02-16-00001-CR, 2016 WL 5443116, at *2 (Tex. App.—Fort Worth Sept. 29, 2016, no pet.) (mem. op., not designated for publication) (recognizing that in an assaultive offense, "the manner and means of causing victim's injury are not essential elements of an offense

---

[1] The indictment specifically stated in relevant part, that "Defendant . . . did unlawfully then and there intentionally, knowingly and recklessly cause serious bodily injury to another, namely, RICKY SIMS, hereinafter called complainant, by . . . losing control of said motor vehicle and striking the deceased, Larry Sims, a pedestrian at a Dallas area rapid transit bus stop[.]

–12–

required to be in hypothetically correct jury charge").  Appellant's third issue is overruled.

## Conclusion

We affirm the trial court's judgments.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
210214F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERICK ESTRADA-MORREAL,
Appellant

No. 05-21-00214-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1957323-L.
Opinion delivered by Justice Smith.
Justices Schenck and Osborne
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered May 26, 2022



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

ERICK ESTRADA-MORREAL,
Appellant

No. 05-21-00215-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1957322-L.
Opinion delivered by Justice Smith.
Justices Schenck and Osborne
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered May 26, 2022