**Affirmed and Opinion filed May 31, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00001-CR

## CRAIG MICHAEL CAMPBELL, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16CR0708**

## O P I N I O N

Appellant Craig Michael Campbell challenges his conviction for deadly conduct, asserting that (1) the evidence is insufficient to support his conviction, (2) the trial court violated his right to compulsory process, and (3) the trial court abused its discretion in excluding evidence of a witness's prior inconsistent statement. Finding no reversible error, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A motorist on her way to work saw the complainant, a woman, running diagonally across the intersection in front of the motorist's car. To the motorist, the complainant appeared to be running away from something. A few seconds later, the motorist saw a gray car come across the intersection. As the car approached, the complainant ran to a gas station on the side of the road. The car followed the complainant, tailing closely behind her and traveling at such a high rate of speed that the car went airborne for a few seconds as it hit the curb and entered the gas station. The complainant ran around the gas station, which appeared closed, attempting to stay near the building as the man at the wheel used the car to chase her, almost hitting the building. At one point, the complainant ran back out to the road and screamed "help me!" at the occupants of a car stopped at the intersection.

Believing the complainant's life to be in danger, the motorist who had been watching the events unfold pulled into the gas station and called the police. The motorist later testified at trial that she made eye contact with the driver who was chasing the complainant. The man could tell the motorist was calling police and he left. After the man left, the motorist told the complainant that the police were coming and the complainant seemed to be relieved.

When the police officer responded to the scene, he made contact with the complainant, who appeared to be very shaken up. She was struggling to catch her breath. The complainant told the police officer that the man who had chased her with his car was appellant. A second eye-witness noticed the police officer at the gas station as he returned from his trip. The second eye-witness stopped and told the police officer that he had seen the complainant exit a car and run across the intersection and relayed that the driver of the car was following the complainant

2

around the gas station at a high rate of speed. The second eye-witness testified that he did not stop initially due to concern for his personal safety. According to the second eye-witness, the complainant was "frantic to get away."

Appellant was arrested and charged with aggravated assault with a deadly weapon. The court set a trial date.

Appellant filed a motion to continue the trial, asserting that appellant recently had retained counsel and the new counsel had to cover another trial. The State opposed the motion for continuance because the complainant, who at the time was incarcerated, was due to get out of jail about two weeks after the trial setting, and the State believed the complainant would not appear for trial if the complainant were released from jail before the case could be tried. The trial court granted appellant's motion for continuance. The complainant was served with a subpoena compelling her attendance at the new trial date and the complainant swore she would appear.

*Trial Testimony*

Both appellant and the State waived their right to a jury trial and tried the case to the bench. At trial, both eye-witnesses and the police officer testified about the events they had witnessed. Appellant testified that the complainant and appellant were dating and the complainant lived with appellant. According to appellant, the complainant had a history of drug abuse, and appellant was trying to help her "stay clean." Appellant explained that the complainant was doing well until a week before the incident, when the complainant overdosed on an over-the-counter medication. The police were called to appellant's house and the complainant received medical treatment. After her release from the hospital, the complainant came to appellant's house for two days and then left to "go party." Two days later, the complainant called appellant early in the morning, and

3

appellant drove to pick her up.

Appellant testified that when he picked up the complainant, he smelled alcohol and the complainant admitted she had been using drugs. Appellant testified that he was mad, upset because the complainant had relapsed. According to appellant, he was taking the complainant back home when the complainant kicked him in the head and ran from the car. Appellant testified that he followed her in the car with the intention of getting her back into the car to take her home. Appellant admitted driving erratically, but testified that he was not trying to hurt the complainant. Appellant pointed out that he had several opportunities to hit the complainant with the vehicle, such as when she slipped and fell, but that he did not hurt her or intend to hurt her. Appellant testified that the complainant came back to his home later that night and he took photographs with her for his protection because she informed him that there was a warrant for his arrest based on the incident at the gas station.

The complainant's mother testified that the complainant suffers from bipolar disorder and that the complainant acted "crazy" when she was in a manic phase. The complainant's mother described appellant as even keeled, always affirming and positive. She stated that appellant gave the complainant lots of love. The complainant's mother testified that appellant helped the complainant's parents in their efforts to treat the complainant's drug addictions. According to the complainant's mother, the complainant came to the mother's house later on the date of the incident, and the complainant told the mother that she had not told the truth to the police officers who responded to the incident at the gas station. The complainant's mother said the complainant is not always truthful. The complainant's father echoed the testimony of the complainant's mother, describing appellant as a positive influence in the complainant's life.

4

An acquaintance of both appellant and the complainant testified that in her observations, appellant and the complainant acted like "love birds." The acquaintance was not aware of any violence between the two.

*Request for Writ of Attachment*

The morning of trial the prosecutor sent an investigator to secure the complainant's presence at trial. The investigator drove to several addresses but could not find the complainant. The State asked for a writ of attachment to secure the complainant's presence at trial, and appellant joined the State's request.

An investigator working for the District Attorney's Office gave an account of his attempts to locate the complainant, testifying that he drove to several addresses, but did not find the complainant. Defense counsel said he thought the address for the complainant's mother's home — one location the investigator went to look for the complainant — was incorrect. Defense counsel stated that the mother was coming to court the next day and suggested that the trial court hold off on putting an address on the writ of attachment until the mother came and provided the correct address.

The next morning the trial court informed the parties that it had signed a writ of attachment the day before, after the defense counsel left. The trial judge stated that the State presented a writ and the State and trial judge attempted to call defense counsel, and that defense counsel's voicemail was full. The trial judge said the clerk's office contacted the judge and told the judge that the clerk's office could not execute the writ because the writ did not contain a bond amount. The prosecutor communicated that the State's investigator drove to all of the known addresses and spoke to the complainant's mother at the complainant's mother's home. The complainant's mother indicated that she had not heard from the complainant since the complainant was released from jail. The investigator

5

testified that he did not know where to find the complainant and had no further ideas about where to search for her. Neither the State nor appellant requested additional relief that morning.

Appellant continued presenting his case and then rested subject to a request that the trial court continue the case based on the writ of attachment. The trial court reminded appellant that no writ of attachment had issued. Appellant then requested a writ of attachment properly be executed and requested a continuance so that appellant might have time to request a writ of attachment and serve the writ. The trial court denied appellant's request to continue the trial.

*Judgment*

The trial court found appellant guilty of the lesser-included offense of deadly conduct and sentenced appellant to one year's confinement in county jail.

ISSUES AND ANALYSIS

**A.    Is the evidence sufficient to support appellant's conviction?**

Appellant first contends that the evidence is insufficient to support his conviction for deadly conduct because the evidence shows he was trying to help the complainant. Appellant asserts that if he had wanted to harm the complainant, he had ample opportunity to do so, and that he did not harm the complainant even though he had the opportunity to do so shows that he did not commit deadly conduct.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*,

667 S.W.2d 137, 143 (Tex. Crim. App. 1984). We may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of deadly conduct if the person recklessly engages in conduct that places another in imminent danger of serious bodily injury. Tex. Penal Code Ann. § 22.05 (West, Westlaw through 2017 1st C.S.); *Ford v. State*, 38 S.W.3d 836, 844 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). One acts recklessly, or is reckless, with respect to circumstances surrounding one's conduct or the result of one's conduct when one is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. Tex. Penal Code Ann. § 6.03 (West, Westlaw through 2017 1st C.S.). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

The two eye-witnesses testified that appellant was driving his car at a high rate of speed and that he was tailing the complainant. One eye-witness testified that appellant was driving so erratically that appellant's car became airborne as

appellant hit the curb of the gas station. According to the witness, appellant was about to run over the complainant with his car. Appellant admitted at trial that he was upset and driving erratically, though he says he did not want to harm the complainant. Even presuming that appellant did not want to harm the complainant, this lack of intent to harm does not render the evidence insufficient because the offense of deadly conduct requires only that appellant's behavior be reckless. *See* Tex. Penal Code Ann. § 22.05.

The record contains evidence that appellant was driving erratically, at a high rate of speed, in pursuit of the complainant, who was on foot. Though appellant asserts that he was not driving at a high rate of speed, the trial court was entitled to credit the eye-witness testimony. *See Turro*, 867 S.W.2d at 47. One eye-witness testified that appellant was close to hitting the complainant and the eye-witness feared the appellant would injure the complainant if the eyewitness did not stop and secure police intervention. *See Gilbert v. State*, 429 S.W.3d 19, 23 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (holding the evidence sufficient to support conviction for deadly conduct based on eye-witness testimony that conflicted with defendant's account). The second eye-witness did not stop out of concern over the danger the circumstances presented. In spite of being so near the complainant, appellant continued driving in an erratic fashion, near the complainant's person. *See id.* While appellant did not strike the complainant, appellant testified that he had to swerve to avoid hitting the complainant. Appellant's conduct showed appellant was aware that his driving was creating a risk to the complainant, and by continuing to drive erratically, appellant consciously disregarded the risk. The trial court reasonably could have inferred from the eyewitness accounts of appellant's driving that appellant was aware of, but consciously disregarded, a substantial and unjustifiable risk that appellant

8

would cause the complainant serious bodily injury by striking her with his car. *See Wheaton v. State*, 129 S.W.3d 267, 274 (Tex. App.—Corpus Christi 2004, no pet.) (inferring deadly conduct from circumstances). The record supports the finding that appellant's reckless conduct placed the complainant in imminent danger of serious bodily injury. *See id.*

We conclude the record contains sufficient evidence to support appellant's conviction for deadly conduct. We overrule appellant's first issue.

**B. Did appellant preserve error on his complaint that the trial court erred in denying his request for a writ of attachment?**

In his second issue, appellant asserts that the trial court violated his right to compulsory process for obtaining witnesses in his favor by denying his request for a writ of attachment. Under both the United States and the Texas Constitution, a defendant has a right to compulsory process to call witnesses to testify on the defendant's behalf. U.S. Const. amend. VI; Tex. Const. art. I § 10; *Etheridge v. State*, 903 S.W.2d 1, 7 (Tex. Crim. App. 1994). The Texas Code of Criminal Procedure requires a defendant to properly serve a subpoena on a witness before the defendant has a right to compulsory process to compel the witness's attendance at trial if the witness has failed to appear. *Clark v. State*, 305 S.W.3d 351, 355–56 (Tex. App.—Houston [14th Dist.] 2010, *aff'd* 365 S.W.3d 333, 340 (Tex. Crim. App. 2012). The issuance of a subpoena inures to the benefit of the opposing party if the opposing party desires to call or examine the witness. *Gentry v. State*, 770 S.W.2d 780, 785 (Tex. Crim. App. 1988).

The law prescribes a three-step process for preserving error when a subpoenaed witness does not appear. *Erwin v. State*, 729 S.W.2d 709, 714 (Tex. Crim. App. 1987), *overruled on other grounds by Burks v. State*, 876 S.W.2d 877, 904 (Tex. Crim. App. 1994). First, the party must request a writ of attachment and

secure a denial of the request from the trial court. *Id.* Second, the party must show the substance of the witness's prospective testimony. *Id.* Third, the party must show that the testimony the absent witness would have given would be relevant and material. *Id.* Appellant did not fulfill these preservation-of-error requirements.

The trial court approved the application for a writ of attachment, but the writ did not issue because the clerk's office concluded the application contained a deficiency. Rather than seek to cure the deficiency on the morning of trial — or object that the writ was not deficient — both parties opted to take no action. Thus, at this juncture, the trial court did not deny any application for a writ of attachment or a corrected writ of attachment.

At the close of his case, appellant requested a continuance to apply for a writ of attachment, and the trial court denied appellant's motion to continue. The trial court did not make any ruling related to appellant's request for a writ of attachment. The trial court's ruling denying appellant's motion to continue trial was not a denial of a request for a writ of attachment. The question of whether the trial court abused its discretion in denying the motion for a continuance for appellant to apply for a writ of attachment stands apart from the issue of whether the trial court violated appellant's right to compulsory process by denying appellant's request for a writ of attachment. *See Gentry v. State*, 770 S.W.2d 780, 785 (Tex. Crim. App. 1988) (analyzing whether trial court abused its discretion in denying request to continue trial to secure witness separately from attachment issue); *Trinidad v. State*, 949 S.W.2d 22, 24 (Tex. App.—San Antonio 1997, no pet.) (same). The record reveals that the trial court never denied a request for a writ of attachment. So, appellant has not preserved error on this argument. *See Erwin*, 729 S.W.2d at 714.

**C. Did the trial court abuse its discretion in denying appellant's motion to continue trial?**

Construing appellant's briefing liberally, we conclude appellant asserts under his second issue that the trial court abused its discretion in denying his motion to continue trial to request a proper writ of attachment.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). To show an abuse of discretion, appellant must show the denial of the motion prejudiced him. *Id.* A trial court may continue a criminal trial if a party files a written motion for continuance that shows sufficient cause for continuance. *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005). After the trial has begun, the trial court may grant a continuance when, by some unexpected occurrence that could not reasonably have been anticipated, the applicant is so taken by surprise that a fair trial cannot be had. Tex. Code Crim. Proc. Ann. art. 29.13 (West 2018). The law requires that one having personal knowledge swear to the facts upon which the applicant relies for the continuance. Tex. Code Crim. Proc. Ann. art. 29.08 (West 2018). Article 29.06 of the Texas Code of Criminal Procedure governs a motion for continuance based on the unavailability of a witness. *Gonzales v. State*, 304 S.W.3d 838, 844 (Tex. Crim. App. 2010). The statute provides that when a defendant files a motion to continue based on the absence of a witness, the defendant must show the following:

> 1. The name of the witness and [the witness's] residence, if known, or that [the witness's] residence is not known.
>
> 2. The diligence which has been used to procure [the witness's] attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue.
>
> 3. The facts which are expected to be proved by the witness, and it

must appear to the court that they are material.

4. That the witness is not absent by the procurement or consent of the defendant.

5. That the motion is not made for delay.

6. That there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. . . .

Tex. Code Crim. Proc. Ann. art. 29.06 (West 2018); *Harrison*, 187 S.W.3d at 434.

Appellant did not meet the technical requirements outlined by article 29.06. Appellant's attorney did not file any written motion or provide a sworn statement that included article 29.06's criteria. In particular, appellant did not make a sworn statement describing the diligence used to procure the complainant's attendance, that the defendant did not procure or consent to the witness's absence, or that the defendant was not making the motion for delay. *See Humphrey v. State*, 681 S.W.2d 223, 224 (Tex. App.—Houston [14th Dist.] 1984, no writ) (holding trial court did not abuse discretion in denying motion to continue due to insufficient motion); *Coleman v. State*, 188 S.W.3d 708, 722 (Tex. App.—Tyler 2005, pet. ref'd) (same).

Even if appellant had filed a proper motion in compliance with the statute, the record reveals that appellant lacked diligence in attempting to secure the complainant's attendance at trial. Weeks before trial, the prosecutor made the court and defense counsel aware of the State's concern that the complainant would not appear at trial if she were released from jail before trial commenced. The State took steps to get the complainant served with a subpoena. Appellant knew before trial commenced that the State had been unable to locate the complainant and that the State was attempting to get relief from the court to secure the complainant's presence at trial.

After the first day of trial, appellant left the courthouse while the State continued to seek relief. Appellant's counsel did not take any further steps to help with the process. When the State and trial judge attempted to communicate with appellant on this point, they were unable to do so because appellant's counsel had left, counsel did not answer his cellphone, and counsel's voicemail was full. The next morning, appellant was aware that the State had applied for a writ of attachment but that the writ did not issue because of a defect. Still, appellant did not ask the trial court to cure the defect, nor did appellant take the position that the writ was not defective and seek relief from the court at that juncture. To successfully complain on appeal, appellant would have had to take proper action upon learning that the attachment did not issue, such as following up and requesting the relief necessary for the writ to have issued. *See Kirk v. State*, 37 S.W. 440, 442 (Tex. Crim. App. 1896) (holding that defendant did not use diligence when defendant failed to follow up on writ of attachment that was not returned; noting that the defendant "should have followed up on his process with more diligence"). Instead, appellant waited until the close of the evidence and then rested subject to a request that the trial court continue the proceedings so that appellant could file a proper application for writ of attachment.

Appellant did not prove that he was diligent in attempting to procure the complainant's presence at trial. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to continue. *See Gonzales v. State*, 304 S.W.3d 838, 843–44 (Tex. Crim. App. 2010) (holding trial court did not abuse discretion in denying motion to continue because motion did not state the diligence defendant exercised in seeking to secure witness). We overrule appellant's second issue.

13

**D. Did the trial court abuse its discretion in excluding evidence of the eye-witness's prior inconsistent statement?**

In the third issue, appellant asserts that the trial court erred in prohibiting appellant from offering evidence of prior inconsistent statements by the first eye-witness to the car-chasing incident. The first eye-witness testified that appellant left the gas station after noticing that the eye-witness was on her phone calling the police. On cross-examination, appellant asked the eye-witness if she told the police officer responding to the scene that appellant left after he unsuccessfully tried to get the complainant to get back into the car with him. The eye-witness denied making the statement to the police officer. Appellant's counsel later attempted to ask the police officer about the eye-witness's statements, giving rise to the following exchange:

> [Appellant's counsel]: Now, didn't she say specifically that the vehicle was trying to make her — make [the complainant] get inside?
>
> [Prosecutor]: Your Honor, I would object to hearsay.
>
> [Trial court]: Sustained.
>
> [Appellant's counsel]: Your Honor, this is solely for impeachment to her testimony that she never made these statements to this officer. And he said we couldn't use the report, but we certainly [sic] use the officer. He was there.
>
> [Prosecutor]: Well, he can ask if statements were made; but, Your Honor, it's hearsay. He is asking what this lady has told him at the scene. It's hearsay.
>
> [Trial court]: I sustain the objection.
>
> [Appellant's counsel]: Didn't she tell you specifically that the Defendant got out of the vehicle and walked towards [the complainant] in an attempt to get her into the vehicle?
>
> [Prosecutor]: Objection to hearsay, Your Honor.
>
> [Trial court]: Sustain the objection.
>
> [Appellant's counsel]: Isn't it true that only after the Defendant was unable to get [the complainant] to return to the vehicle with him that

14

he then — the Defendant then got back in the vehicle and left?

[Police officer]: She never got back —

[Prosecutor]: Objection to speculation.

[Trial court]: I sustain the objection.

Appellant made an offer of proof that the police officer would testify that at the scene, the eye-witness told the police officer that appellant left the location after appellant was unable to get the complainant to get back into his car.

On appeal, appellant asserts that the trial court abused its discretion in excluding this evidence because (1) appellant did not offer the statements for the truth of the matter asserted and (2) the evidence was admissible as impeachment evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). In analyzing this issue, we presume for the sake of argument that the trial court erred in excluding this evidence.

Now, we turn to consider what harm, if any, resulted from that error. *See* Tex. R. App. P. 44.2. To determine the standard governing our harm analysis, we first must classify the error as constitutional or nonconstitutional error. *See* Tex. R. App. P. 44.2. A constitutional error within the meaning of Texas Rule of Appellate Procedure 44.2(a) is an error that directly offends the United States Constitution or Texas Constitution, without regard to any statute or rule that also might apply. *Geuder v. State*, 142 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). An erroneous evidentiary ruling amounts to constitutional error only if the correct ruling was constitutionally required. *Id.* For example, the erroneous exclusion of evidence is constitutional error if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *See Saenz v. State*, 474 S.W.3d 47, 54 (Tex. App.—Houston [14th Dist.] 2015, no pet.). If the exclusion of the evidence is nonconstitutional

15

error, then we review the trial court's ruling under Texas Rule of Appellate Procedure 44.2(b). *See id.* Appellant asserts that the exclusion rose to the level of constitutional error because it prevented him from presenting evidence that the eye-witness's testimony was unreliable. The trial court was not constitutionally required to admit the impeachment evidence because evidence did not form such a vital portion of the case that the exclusion prevented appellant from presenting a defense. *See Walters v. State*, 247 S.W.3d 204, 207 (Tex. Crim. App. 2007). Because the error is nonconstitutional, we deem the error harmful only if the error affected appellant's substantial rights. *See Geuder*, 142 S.W.3d at 376.

The complainant's testimony that appellant left the gas station when appellant saw the complainant on the telephone relates to actions that appellant took after the actionable conduct. An inconsistency in the eye-witness's report of these actions does not relate to any of the conduct at issue. The inconsistency relates to appellant's consciousness of guilt and to the complainant's memory. With respect to consciousness of guilt, appellant was convicted of deadly conduct, a crime that did not require any consciousness of guilt. Tex. Penal Code Ann. § 22.05; *Ford*, 38 S.W.3d at 844. The record evidence, including appellant's admission that he was driving erratically, strongly supports the trial court's finding that appellant was reckless.

To the extent the inconsistency may have undermined the eye-witness's credibility by suggesting that the eye-witness had faulty memory, two eye-witnesses described appellant's erratic and dangerous driving. The first eye-witness was so affected by appellant's driving that she called the police. Appellant admitted he was upset and driving erratically. The record evidence strongly supports appellant's conviction for deadly conduct. Based on the strength of the record evidence and the limited impact of any impeachment testimony based on

16

the eye-witness's prior inconsistent statement, we conclude that any error in excluding the evidence was harmless. *See* Tex. R. App. P. 44.2(b); *Broussard v. State*, 434 S.W.3d 828, 836 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Thus, we overrule appellant's third issue.

## CONCLUSION

The evidence supports appellant's conviction. Appellant did not preserve error on his complaint that the trial court violated his right to compulsory process because the trial court did not deny his request for a writ of attachment. Likewise, the trial court did not abuse its discretion in denying appellant's motion for continuance because appellant did not use diligence in attempting to secure the complainant's presence at trial. Any error in excluding the police officer's testimony regarding the eye-witness's statements to the police officer is harmless and so presents no grounds for appellate relief. We affirm the trial court's judgment.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise.
Publish — TEX. R. APP. P. 47.2(b).