

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00036-CR
No. 02-20-00037-CR
No. 02-20-00038-CR

———————————————

DERRICK WALTON, Appellant

V.

THE STATE OF TEXAS

On Appeal from 362nd District Court
Denton County, Texas
Trial Court Nos. F17-2958-431, F17-2959-431, F17-2960-431

Before Sudderth, C.J.; Kerr and Walker, JJ.
Opinion by Justice Walker

## OPINION

Appellant Derrick Walton was charged in three indictments with unlawful restraint and two acts of aggravated assault. A jury found Walton guilty of unlawful restraint but found him guilty of the lesser-included offenses of deadly conduct as to the two aggravated assault charges. Walton appeals his conviction for unlawful restraint. He argues in four points that the evidence is legally insufficient to support the jury's guilty verdict. In his last issue, Walton asserts that the trial court erred by assessing fines and fees in each of his three cases because the trial court ordered his sentences to run concurrently.

We affirm the unlawful restraint judgment as is, modify the trial court's deadly conduct judgments to delete the fines and the fee assessed by the trial court, and affirm the deadly conduct judgments as modified.

## I. FACTS

Belinda Wright was Walton's girlfriend in 2017. One night that summer, as Walton was leaving Wright's apartment in Irving, Walton asked Wright to talk with him in his truck. Wright was hesitant to talk to Walton because he had just used cocaine. As soon as Wright stepped into the truck cab's interior, Walton "sped off." Wright immediately asked Walton to stop the truck and let her out, but he refused. Walton's driving was "erratic" and "dangerous." He told Wright that something had happened to his kids and that, "I'm going to die. You're going to die." Wright repeatedly asked Walton to stop or slow down, but he refused to do either.

2

Multiple drivers observed Walton "traveling at a high rate of speed" and "swerving in and out of traffic." Walton nearly sideswiped one driver. Wright was seen by at least one driver frantically waving her arms and asking for help. That driver called 911 to report what he had seen.

Walton drove through Coppell to Lewisville, toward Denton, and eventually ended up in Flower Mound. While speeding through Flower Mound, Walton ran a red light and hit a parked car, totaling it. The truck stalled, and Wright was able to escape and run away from Walton.

Shortly after the crash, police arrived and made contact with Walton, who appeared intoxicated. An officer asked him if he was under the influence, and Walton answered that he had "dabbled in cocaine." Police officers eventually arrested Walton at the scene for driving while intoxicated and found baggies that contained the residue of a white, powdery substance in Walton's pockets.

## II. SUFFICIENCY OF THE EVIDENCE

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

In *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997), the Court of Criminal Appeals articulated the modern Texas standard for ascertaining what the

3

"essential elements of the crime" are; they are "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The law "as authorized by the indictment" is "the statutory elements of the offense . . . as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). The hypothetically correct jury charge does not necessarily have to track all the charging instrument's allegations such as those that give rise to immaterial variances. *Gollihar v. State*, 46 S.W.3d 243, 253, 256 (Tex. Crim. App. 2001).

## A. RECKLESSNESS EVIDENCE

In his first issue, Walton claims that the evidence is insufficient to support the jury's verdict that he recklessly exposed Wright to a substantial risk of serious bodily injury during the unlawful restraint.[1] A person commits the offense of unlawful restraint when the person "intentionally or knowingly restrains another person." Tex. Penal Code Ann. § 20.02(a). This offense is a third-degree felony if "the actor recklessly exposes the victim to a substantial risk of serious bodily injury" during the

---

[1]Walton does not claim that the evidence is insufficient to support the jury's conclusion that he unlawfully restrained Wright.

4

unlawful restraint. *Id.* § 20.02(c)(2)(A). In this case the indictment alleged, and the charge required the jury to decide, whether Walton recklessly exposed Wright to a substantial risk of serious bodily injury by not allowing her to exit the vehicle he drove.

Walton concedes that the State elicited testimony that his cocaine-addled driving, while he unlawfully restrained Wright in the truck, was "erratic" and "potentially reckless." Nevertheless, Walton claims that the State failed to present any evidence at trial of the manner and means of recklessness alleged in the indictment at trial—that is, whether his action in not allowing Wright to exit the truck exposed her to a substantial risk of serious bodily injury. Consequently, Walton claims that there is insufficient evidence to support the recklessness element as set out in a hypothetically correct jury charge. We disagree.

First, we note that the alleged manner and means of creating a substantial risk of serious bodily injury is not an essential element of the offense and therefore is not included within the hypothetically correct jury charge. *See e.g., Phelps v. State*, 999 S.W.2d 512, 515 (Tex. App.—Eastland 1999, pet. ref'd) (holding the variance in the manner and means of the alleged act (striking head of the victim with his hands) and proof at trial (no evidence that defendant used his hands) was immaterial since the manner and means was not included in the hypothetically correct jury charge); *Botello v. State*, No. 08–04–00127–CR, 2005 WL 2044667, at *2–3 (Tex. App.—El Paso Aug. 25, 2005, pet. ref'd) (mem. op., not designated for publication) (holding

5

variance between the alleged manner and means (striking the head of the complainant against a door frame) and the actual manner and means used (pushing complainant) immaterial since the manner and means was not included in the hypothetically correct jury charge). Therefore, the language "by not allowing Belin[d]a White to exit a vehicle driven by Derrick Walton" is not an element of the third-degree felony offense of unlawful restraint and is thus not included in this court's sufficiency review.

To the extent that Walton claims Texas Code of Criminal Procedure Article 21.15's notice requirement requires a hypothetically correct jury charge to include the act or acts relied upon to constitute recklessness, such an argument also fails. *See* Tex. Code Crim. Proc. Ann. art. 21.15. Recklessly exposing a victim to a substantial risk of serious bodily injury is a result-of-conduct element. *Lugo-Lugo v. State*, 650 S.W.2d 72, 86 n. 5 (State Bar Committee on Revision of the Penal Code (Final Draft 1970)) (Tex. Crim. App. 1983) (Clinton, J., concurring). Regarding a result-of-conduct element, any variance in pleading and proof is immaterial. *Ramos v. State*, 407 S.W.3d 265, 270 (Tex. Crim. App. 2013). And "allegations that give rise to immaterial variances" need not be "incorporate[d]" into the hypothetically correct jury charge for the case. *Johnson*, 364 S.W.3d at 294. Accordingly, the acts constituting recklessness as pled in the indictment were not required to be included in the hypothetically correct jury charge. *Ramos*, 407 S.W.3d at 270–71.

Finally, in the context of this case, the evidence demonstrates that Walton's refusal to allow Wright to exit his truck did in fact put her at a substantial risk of

6

serious bodily injury. Most significantly, the State presented evidence that Walton crashed the truck into another car while he held Wright captive. We do not doubt that crashing a truck into another car would put a passenger in the truck at a substantial risk of serious bodily injury. And the State presented additional evidence of Walton's driving that the jurors could have found put Wright at a substantial risk of serious bodily injury

Wright testified that Walton sped out of her apartment parking lot without turning on the truck's headlights. Walton then drove onto the entrance ramp of the highway at such a high speed that Wright said it felt like the truck was balanced on just two of its wheels. Wright explained that while Walton was driving the large truck, he weaved in and out of traffic, ran red lights, and repeatedly told her that she was "going to die."

A witness on his way home from work in Flower Mound called 911 after seeing what was later determined to be Walton's truck. The witness described a "large vehicle traveling at a high rate of speed . . . swerving in and out of traffic." The witness noticed a woman in the passenger seat of the truck "waving [her] hands violently, asking for help." The witness described the female passenger as "[f]rantic."

Another witness who saw Walton driving the truck that night testified that Walton was speeding, swerving in and out of the lanes of traffic, and driving "very, very bad[ly]." The witness said that Walton almost "sideswiped" his car and that he was not surprised that Walton crashed into another car. The witness testified that the

7

truck ran a red light before hitting the other vehicle. Additionally, the witness testified that Walton did not stop after crashing into the vehicle in Flower Mound. The witness noticed Wright at the accident scene and said that she was screaming and seemed very upset. Wright told him that the driver of the truck had "kidnapped" her. Wright also told the witness that she had been "scared for her life." The witness believed that the car Walton ran into was totaled.

Detective Mike Short of the Lewisville police department testified that he was driving home after his shift when he saw Walton's large truck driving through Lewisville. Short testified that he noticed the truck because it was weaving back and forth between lanes of traffic without using indicator lights and was traveling at high speeds. Short described Walton's driving as "reckless." He believed that the driver of the truck was intoxicated. Short tried to follow the truck but lost sight of it for a few minutes. However, Short quickly came upon the accident scene and noticed a "frantic" looking woman running away from the wreck. Short called 911 and stated that the accident scene was "chaotic."

Short drove through the accident scene in an attempt to catch up with the large truck he had seen a few minutes before. Within a mile of the accident scene, Short came upon the truck. He noticed that it was traveling much slower than before and that it had sustained front-end damage.

Officer Dolan of the Flower Mound Police Department was dispatched to the scene. After observing Walton, Dolan believed that he was under the influence of

narcotics or alcohol. Dolan testified that Walton's speech was "incoherent." When Dolan asked Walton if he was under the influence of any substances that evening, Walton responded "I dabbled in cocaine."

Based on the evidence introduced at trial, a rational trier of fact could have found that Walton recklessly put Wright at a substantial risk for serious bodily injury. We overrule Walton's first issue.

## B. AWARE OF RISK AND CONSCIOUS DISREGARD EVIDENCE

In his second sufficiency issue, Walton claims that the State failed to prove that he was aware of, but consciously disregarded, a substantial and unjustifiable risk that his conduct would expose Wright to a substantial risk of serious bodily injury.

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tex. Penal Code Ann. § 6.03(c). The risk created "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* The State may prove recklessness through direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *See Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). Recklessness can be applied generally to the act of driving. *Zorn v. State*, 315 S.W.3d 616, 620 (Tex. App.—Tyler 2010, no pet.); *see, e.g., Aliff v. State*, 627 S.W.2d 166, 172

9

(Tex. Crim. App. 1982) (concluding that recklessness was shown where defendant operated motor vehicle at over 100 miles per hour, passed a car on shoulder, locked his brakes, and skidded into collision with another car); *Arellano v. State*, 54 S.W.3d 391, 393 (Tex. App.—Waco 2001, pet. ref'd) (concluding that reckless element was satisfied where there were visible signs indicating "speed limit was reduced" but skid marks showed that defendant was driving at excessive speed under circumstances); *Trepanier v. State*, 940 S.W.2d 827, 830 (Tex. App.—Austin 1997, pet. ref'd) (determining that driver was reckless when he attempted to illegally pass traffic on right shoulder of road); *Banister v. State*, 761 S.W.2d 849, 850 (Tex. App.—Beaumont 1988, no pet.) (holding that recklessness was shown where truck driver put truck in reverse during heavy fog on highway and struck driver proceeding legally in same lane).

In this case, the evidence at trial showed several acts by Walton that revealed conscious risk creation—that is "a conscious disregard for the risk involved in driving in the manner in which the appellant was driving," *see Aliff*, 627 S.W.2d at 172, including weaving in and out of multiple lanes of traffic without using his indicator lights, running red lights, traveling at a very high speed, not attempting to maneuver to avoid a collision with a stationary vehicle, and driving after consuming cocaine. *See, e.g., Galvan v. State*, No. 13-14-00059-CR, 2016 WL 1393507, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 7, 2016, pet. ref'd) (mem. op., not designated for publication) (observing that Texas courts "have found evidence sufficient to support a

10

conviction for reckless conduct based upon impaired driving due to the consumption of any amount of alcohol"); *Gill v. State*, 981 S.W.2d 517, 519 (Tex. App.—Beaumont 1998, no pet.) (holding that intoxication is a factor that weighs in favor of a finding of recklessness). Moreover, Wright testified that Walton intentionally hit another vehicle. *See Campbell v. State*, 551 S.W.3d 371, 377 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that erratic driving which included a high rate of speed and almost striking the complainant was sufficient evidence to support a conviction for recklessly engaging in deadly conduct).

Walton argues that the paranoid or delusional statements he made while driving the truck demonstrate that he did not consciously disregard a substantial and unjustifiable risk that his conduct would expose Wright to a substantial risk of serious bodily injury. However, a paranoid or delusional mindset is not incompatible with reckless conduct towards a victim. *Cf. Mays v. State*, 318 S.W.3d 368, 380–81 (Tex. Crim. App. 2010) (holding that the defendant's mental-illness evidence explained his actions and demonstrated why he intentionally and knowingly killed law enforcement officer; defendant's mental-illness evidence did not "suggest that he did not intend to shoot a person"). Here, the jury could have believed that Walton's paranoid or delusional statements that he was hearing voices telling him that his kids were in the back of the truck and that "[s]omething happened to my kids. I'm going to die. You're going to die," was the reason he consciously disregarded the substantial and

unjustifiable risk that his conduct would expose Wright to a substantial risk of serious bodily injury. *Id.*

Additionally, the jury could have believed that Walton's paranoid or delusional statements were the result of the cocaine that he used. The analyst who testified at trial stated that using cocaine can cause a person to become paranoid and suffer from hallucinations. And we note that intoxication is not a defense to the commission of an offense. *See* Tex. Penal Code Ann. § 8.04(a); *Nicholson v. State*, 594 S.W.3d 480, 490 (Tex. App.—Waco 2019, pet. ref'd) (holding that the appellant's use of cocaine prior to the offense was a factor that weighed in favor of a recklessness finding).

From the combined and cumulative force of all the evidence presented in this case, *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (stating that in an evidentiary sufficiency review, the appellate court must consider "all of the evidence" and "the cumulative force of all the incriminating circumstances"), and the reasonable inferences from it, *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (recognizing that "the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence"), the jury could have found beyond a reasonable doubt that Walton was actually aware of, but consciously disregarded, a substantial and unjustifiable risk that his refusal to allow Wright to leave the truck would expose her to a substantial risk of serious bodily injury. *See Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015) ("[W]here the inferences made by the factfinder are

12

reasonable in light of the cumulative force of all the evidence when considered in the light most favorable to the verdict, the conviction will be upheld.") (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). We overrule Walton's second issue.

## C. RECKLESSNESS DURING UNLAWFUL RESTRAINT EVIDENCE

In his third issue, Walton argues that the evidence is insufficient to support the jury's verdict that he acted recklessly in exposing Wright to a substantial and unjustifiable risk of serious bodily injury because he had completed the offense of unlawful restraint *before* he acted recklessly toward Wright. Walton, in essence, argues that the unlawful restraint occurred and was completed the first time that Walton refused Wright's request to get out of his truck (while driving though the apartment's parking lot) and that there is no evidence that he acted recklessly *before that time*. Thus, he claims that the evidence is insufficient to support the third-degree reckless enhancing element. We disagree.

"Restrain" means to restrict a person's movements without consent so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. Tex. Penal Code Ann. § 20.01(1)(A). Our law imposes no minimal requirement or time limitation for restraint. *Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985).

In a similar case, the appellant contended that the abduction underlying his conviction for kidnapping, aggravated by an intent to violate or abuse the victim

13

sexually, was complete at the time that the abduction was originally accomplished. *Weaver v. State*, 657 S.W.2d 148, 150 (Tex. Crim. App. 1983). Since there was no evidence of his intent to sexually abuse the victim at that particular time, the appellant argued the evidence did not support the conviction. *Id.* In overruling the appellant's contention, the Court of Criminal Appeals held that the restraint incident to abduction did not necessarily occur only at one specific time but was a continuous, ongoing offense until the victim's release, and that proof of aggravating conduct occurring during the period of abduction was sufficient to "show the ongoing abduction together with the intent to violate or abuse sexually." *Id.*

Here, the evidence demonstrates that Walton unlawfully restrained Wright—Walton does not dispute the proof of unlawful restraint. Instead, Walton claims that the aggravating element of recklessly exposing Wright to a substantial and unjustifiable risk of serious bodily injury was not proved to have occurred *at the time* of the unlawful restraint—a time he claims was at one specific moment—when Wright asked Walton to let her out of the truck, and Walton refused. Walton's argument fails because the act of restraint is a continuing ongoing act. *See Rogers*, 687 S.W.2dd at 342; *see also Garza v. State*, 788 S.W.2d 651, 655 (Tex. App.—Corpus Christi–Edinburg 1990, no pet.) (holding restraint involved in the offense of kidnapping does not necessarily occur only at one time but continues throughout the offense until the release).

Wright was restrained from the moment Walton refused to allow her to leave his truck until the moment she escaped the truck at the Flower Mound crash site. *See* Tex. Penal Code Ann. §§ 20.01(1)(A), 20.02(a). The unlawful restraint was a continuous, ongoing event. Moreover, Walton's reckless act in exposing Wright to a substantial and unjustifiable risk of serious bodily injury was proved by testimony from Wright and other witnesses who observed Walton's driving. Their testimony established that Walton wove in and out of multiple lanes of traffic without using the truck's indicator lights, ran multiple red lights, traveled at a very high speed, failed to attempt to avoid the collision with the stationary vehicle, and drove after using cocaine. We hold that there is sufficient evidence to show the ongoing restraint together with Walton's reckless act in exposing Wright to a substantial and unjustifiable risk of serious bodily injury. *See* Tex. Penal Code Ann. § 20.02(c)(2)(A). We overrule Walton's third issue.

## D. DEADLY WEAPON EVIDENCE

In his fourth issue, Walton argues that there is no evidence that the truck he drove was employed as a deadly weapon. We disagree.

A deadly weapon is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B). Though not a deadly weapon per se, a motor vehicle may become one depending on the manner of its use or intended use. *Chaudron v. State*, No. 07-18-00295-CR, 2019 WL 6723395, at *1 (Tex. App.—Amarillo Nov. 8, 2019,

15

pet. ref'd) (mem. op., not designated for publication); *Cummings v. State*, No. 05-17-00852-CR, 2018 WL 3629105, at *3 (Tex. App.—Dallas July 31, 2018, pet. ref'd) (mem. op., not designated for publication). In assessing whether the vehicle in question became one, we evaluate both the way it was used and whether it was capable of causing death or serious bodily injury. *Chaudron*, 2019 WL 6723395, at *2–3; *accord Moore v. State*, 520 S.W.3d 906, 910 (Tex. Crim. App. 2017) (stating same). The way a vehicle was used implicates considerations like whether the accused drove recklessly or dangerously as he committed the crime. *Moore*, 520 S.W.3d at 910. Speeding coupled with neglecting to control the vehicle may indicate such recklessness or dangerousness. *See id.* (noting prior opinions and stating it has concluded there was evidence of reckless or dangerous driving where the defendant had been speeding and failed to apply the vehicle's brakes or otherwise control his vehicle prior to a collision). And, as for the prong dealing with the vehicle's capability of causing death or serious injury, proof of any actual injury is unnecessary. *See id.* at 909. Evidence that others were "endangered" is sufficient. *Id.*

The record before us contains evidence that Walton sped, wove through traffic, and ran red lights while confining Wright in his truck when other cars were driving near him. He nearly broadsided two cars, and he crashed into and totaled a third. The driver of the car Walton totaled thought he would have been killed or seriously injured had he not sped up to avoid a full head-on crash.

16

Walton argues that the "offense was completed prior to the time a reasonable jury could infer [he] formed the intent to use the vehicle as a deadly weapon." But, as discussed in response to Walton's third issue about the third-degree element, the offense was not completed when Wright asked Walton to stop the truck and let her out—it continued until Wright was able to escape the truck after the crash. *See supra* Section C, pg. 15.

From the foregoing, a rational trier of fact could reasonably conclude not only that Walton drove his truck in a reckless and dangerous way but also that the truck endangered others. The fact that no one was injured does not preclude a finding that Walton's truck was a deadly weapon in its use. The circumstances here exceeded the "bare facts [deemed] insufficient to establish that the defendant 'caused another vehicle or person to be in actual danger.'" *Moore*, 520 S.W.3d at 910. Consequently, the finding under attack has sufficient evidentiary support. *See, e.g., Drichas v. State*, 175 S.W.3d 795, 797–98 (Tex. Crim. App. 2005) (holding that the appellant's acts in disregarding traffic signs and signals, driving erratically, weaving between lanes and within lanes, turning abruptly into a construction zone, knocking down barricades, and driving on the wrong side on the highway in the presence of some traffic was enough to support a deadly-weapon finding); *Cummings*, 2018 WL 3629105, at *4 (holding that the appellant's acts of traveling at an unsafe speed in an urban area, running stop signs, slowing down only to make a turn at an intersection, squealing his tires, crawling from the window while the car was still moving and going over a curb

17

was sufficient to support a deadly-weapon finding). We overrule Walton's fourth issue.

## III. FEES AND COSTS

In his last issue, Walton asserts that the trial court erred by assessing fines and fees in each of his three cases because the trial court ordered his sentences to run concurrently. The State concedes that Walton is correct, and we agree.

The trial court signed three judgments: one for unlawful restraint, one for deadly conduct, and a third for deadly conduct. The court assessed a $5,000 fine for the offense of unlawful restraint and assessed a $2,000 fine for each deadly conduct offense. The court assessed various costs and fees, including a time payment fee, as a part of the unlawful restraint judgment. Other than the time payment fee, the two deadly conduct judgments do not contain the various costs included in the unlawful restraint judgment. All three judgments state—in accordance with the trial judge's oral pronouncement—that the sentences run concurrently.

Because a fine is part of a sentence, fines running concurrently may not be added to each other; instead, the defendant is obligated to pay only one fine. *See State v. Crook*, 248 S.W.3d 172, 174, 176 (Tex. Crim. App. 2008); *Williams v. State*, 495 S.W.3d 583, 590–91 (Tex. App.—Houston [1st Dist.] 2016) (op. on reh'g), *pet. dism'd*, No. PD-0947-16, 2017 WL 1493488 (Tex. Crim. App. Apr. 26, 2017) (per curiam) (not designated for publication); *Wiedenfeld v. State*, 450 S.W.3d 905, 906–07 (Tex. App.—San Antonio 2014, no pet.).

18

Similarly, when multiple offenses are tried in a single criminal action, a trial court may assess each court cost only once against a defendant. *See* Tex. Code Crim. Proc. Ann. art. 102.073.[2] When a trial court erroneously assesses court costs for multiple convictions tried in a single proceeding, we retain the court costs for the offense of the highest category. *See id.* at 102.073(b); *Valdez v. State*, Nos. 03-16-00811-CR, 03-16-00812-CR, 2017 WL 4478233, at \*4, \*6 (Tex. App.—Austin Oct. 6, 2017, no pet.) (mem. op., not designated for publication) (retaining the court costs assessed for the second-degree possession conviction but deleting the costs assessed for the third-degree conviction of unlawful possession of a firearm by a felon).

Accordingly, because the trial judge ordered Walton's three sentences to run concurrently, we modify the two deadly conduct judgments to delete the $2,000 fines. *See* Tex. R. App. P. 43.2(b). We also modify the trial court's judgments to delete the assessed court costs for the time payment fees in the two deadly conduct cases.[3] *Id.*

---

[2]The phrase "[i]n a single criminal action" is not defined. However, drawing on how the [CCA] interpreted the same language used in a different statute, the Waco Court of Appeals construed it to mean allegations and evidence of more than one offense that are presented in a single trial or plea proceeding. *Hurlburt v. State*, 506 S.W.3d 199, 203 (Tex. App.—Waco 2016, no pet.).

[3]We note that here the offense of unlawful restraint is a third-degree felony because Walton recklessly exposed Wright to a substantial risk of serious bodily injury. *See* Tex. Penal Code Ann. § 20.02(c)(2)(A). Deadly conduct is a class A misdemeanor. *Id.* at 22.05(e).

# IV. CONCLUSION

We affirm the unlawful restraint judgment as is. We modify the trial court's deadly conduct judgments to delete the fines and the time payment fees assessed by the trial court and affirm the deadly conduct judgments as modified.

/s/ Brian Walker

Brian Walker
Justice

Publish

Delivered: February 17, 2022

20